**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH COCCHI,                                        No. C-05-1347 JCS

        Plaintiff(s),

   v.                                              **ORDER DENYING MOTION TO REMAND AND DENYING PETITION TO COMPEL ARBITRATION AND STAY LAWSUIT PENDING ARBITRATION [Docket Nos. 6 & 12]**

CIRCUIT CITY STORES, INC., ET AL.,

        Defendant(s).

_____/

## I.      INTRODUCTION

Plaintiff filed this action in state court on February 25, 2005. Defendants removed the action to this Court on April 1, 2005, and now bring a Petition to Compel Arbitration. Plaintiff, in turn, brings a Motion to Remand. Both motions came on for hearing on Friday, June 17, 2005, at 9:30 a.m. For the reasons stated below, both motions are DENIED.

## II.     BACKGROUND

### A.      Facts

Plaintiff, Joseph Cocchi, was employed by Circuit City in San Mateo in the car audio installation and sales department from November 2001 to January 14, 2004. Complaint at ¶¶ 6, 10. When he applied for his position, he signed a Dispute Resolution Agreement ("DRA"), pursuant to which he agreed to "settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment and/or cessation of employment with Circuit City, exclusively by final and binding arbitration before a neutral Arbitrator." Declaration of Teri C. Miles in Support of Petition to Compel Arbitration and Stay Lawsuit Pending Arbitration ("Miles Decl."), Ex. A The DRA states that arbitration shall be governed by the Circuit City Dispute Resolution Rules and Procedures ("Rules and Procedures"), and that applicants must "familiarize" themselves with these

United States District Court
For the Northern District of California

procedures before signing the DRA. *Id*. Cocchi states in his declaration that he received a copy of the 2001 version of the Rules and Procedures at the time he was employed but that he discarded it when a new Rules and Procedures was issued, in 2003. Declaration of Joseph Cocchi in Support of Plaintiff's Opposition to Defendants' Petition to Compel Arbitration and Stay Lawsuit Pending Arbitration ("Cocchi Decl.").

Cocchi alleges that while employed by Circuit City, he performed all his job duties in a satisfactory fashion and was never reprimanded or warned of customer service problems. Complaint at ¶ 6. *Id*. However, Circuit City terminated Cocchi's employment on January 14, 2004, at the decision of Cocchi's supervisor, Defendant James McGrath, who cited "bad customer service" as the reason for termination. *Id.* at ¶ 10. According to the Complaint, the termination of Cocchi's employment immediately followed an incident eight days earlier in which Cocchi was threatened and attacked by four customers. *Id*. at ¶¶ 7-10.

Cocchi alleges that on January 6, 2004, at 7:45 in the evening, after his department had closed, he was on duty and alone when four customers approached with inquiries about certain car audio parts. *Id.* at ¶ 7. When Cocchi told them that the department had closed forty-five minutes earlier, the customers became angry and one of them, without provocation, hit Cocchi in the right temple with a closed fist. *Id.* According to the Complaint, Plaintiff then called for help while simultaneously defending himself by pushing his assailant away and holding his hand against the customer's chest. *Id*. Apparently, the customers then left the building, and Cocchi relayed the details of this incident to the night manager at Circuit City but declined to file charges with the police. *Id.* at ¶ 8.

In the wake of this incident, on January 11, 2004, Circuit City placed Cocchi on administrative leave to investigate the incident, and three days later McGrath told Cocchi that his employment was terminated for "bad customer service." *Id.* at ¶¶ 9-10. Plaintiff asserts that McGrath never spoke with him about the January 6th incident. *Id.* at ¶ 10.

**B.      Procedural Background**

Plaintiff filed this action on February 25, 2005 in California Superior Court for the County of San Francisco. In his complaint, he asserts three claims: (1) wrongful discharge in violation of public policy; (2) intentional infliction of emotional distress; and (3) negligent infliction of emotional distress. *See* Complaint at ¶¶ 11-21. The first claim is based on two theories. First, Cocchi claims that he was

2

terminated in retaliation for his act of self-defense, which he asserts is a protected right under Article 1, section 1 of the California Constitution. *Id.* at ¶11. Second, he claims that he was terminated in retaliation for his complaint to the night manager about safety in the store, in violation of California Labor Code § 6310. *Id.* at ¶12. Cocchi named as defendants Circuit City and supervisor McGrath, as well as twenty unidentified Does, and the three claims were made against all Defendants. Cocchi seeks past lost wages and benefits, future lost wages and benefits, general damages, punitive damages, attorneys' fees and costs of suit. *Id.* at 6.

On April 1, 2005, Circuit City filed a Notice of Removal removing the action to this Court on the basis of diversity jurisdiction. In its Notice of Removal, Circuit City asserts that all parties are diverse because Circuit City is a Virginia corporation, Cocchi is a California resident and McGrath – who is also a California resident – is a "sham" defendant. With respect to McGrath, Defendants assert Plaintiff's complaint does not support any claim against McGrath because: 1) Plaintiff has not alleged facts sufficient to support the emotional distress claims against McGrath; and 2) McGrath's acts related to the termination of Cocchi's employment were within the course and scope of his employment as a manager. As to the amount in controversy, Circuit City asserts that the compensatory damages and punitive damages sought by Plaintiff satisfy the jurisdictional requirement because in similar cases damages "routinely exceed the $75,000 jurisdictional threshold." Notice of Removal at ¶ 4.

Cocchi now brings a Motion to Remand, while Circuit City brings a Petition to Compel Arbitration.

### 1.    Motion to Remand

Cocchi moves to remand the case to state court on the basis that McGrath is not a sham defendant and, therefore, there is incomplete diversity. First, Plaintiff asserts that as to the wrongful discharge claims, there is, at minimum, an unsettled question of California law regarding whether a supervisor may be liable, making remand appropriate. With respect to Labor Code § 6310, Plaintiff points out that the section prohibits any "person" from discharging or discriminating against an employee based on safety complaints and argues this languages indicates an intent by the legislature to allows supervisors to be sued for public policy violations based on § 6310. Plaintiff also argues that he has adequately alleged his claims for intentional and negligent inflict of emotional distress.

Finally, Plaintiff moves for attorneys' fees incurred in preparing the Motion to Remand under 28

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

U.S.C. § 1447.  *See* Motion to Remand at 19-20.  Plaintiff claims that $6,075 in attorneys' fees were incurred by Plaintiff's counsel, and has submitted a declaration from his counsel as the basis for the fees incurred.  *See* Declaration of Anthony P. O'Brien in Support of Plaintiff's Motion to Remand and Request for Attorney's Fees ("O'Brien Decl.).

In their Opposition, Defendants accuses Plaintiff of "eleventh hour efforts to 'change the facts,'" asserting that Cocchi, in his Motion to Remand, has embellished the facts as compared to those alleged in the Complaint.  *See* Opposition at 5-6.  Defendants go on to attack Plaintiff's characterization of the issue of individual liability for managers under Labor Code § 6310 as one of first impression.  Defendants argue that California state law regarding individual liability for managers under California Labor Code § 6310 is well settled and that Cocchi's allegations against McGrath do not fall into the category of valid claims for individual liability of managers.  *See* Opposition at 6-8.  Defendants argue further that Plaintiff has failed to state a valid complaint for intentional or negligent infliction of emotional distress because the facts alleged do not establish a claim under the case law.  *See* Opposition at 8-11. Finally, Circuit City opposes Cocchi's request for attorneys' fees, arguing that there is no basis for awarding attorneys' fees where "defendant had objectively reasonable grounds to believe removal was legally proper."  *See* Opposition at 12.  Circuit City asserts that it removed this case in good faith.  *See* Opposition at 13.

## 2.    Petition to Compel Arbitration

In its Petition to Compel Arbitration, Circuit City asserts that it is entitled to an order compelling Plaintiff to arbitrate his claims, pointing to the arbitration agreement Cocchi signed at the time he applied for his position (the DRA). Circuit City asserts that the arbitration agreement should be enforced because Cocchii's claims are within the scope of the agreement, the rules governing the arbitration that are set forth in the Rules and Procedures are fair and reasonable, and there is a strong policy in favor of enforcing arbitration agreements.

Cocchi does not dispute that his claims fall within the scope of the arbitration agreement.  However, he asserts that the agreement is unenforceable because, under the applicable California law, its is unconscionable, both procedurally and substantively.  He argues that the agreement is procedurally unconscionable because of the uneven bargaining power of Cocchi and Circuit City, precluding any negotiation over the terms of the agreement.  In addition, Cocchi points to the following seven aspects of

4

**United States District Court**

For the Northern District of California

1   the Rules and Procedures that he asserts are substantively unconscionable: 1) a one-year statute of

2   limitations on claims; 2) cost-sharing provisions that impose a $75 arbitration filing fee on the employee and

3   award the costs of arbitration to the prevailing party;[1] 3) a unilateral right to terminate or amend the

4   arbitration agreement and the Rules and Procedures; 4) limitations on interrogatories and depositions; 5) a

5   prohibition on class actions; 6) in the 2003 Rules and Procedures, a provision requiring that the employee

6   demonstrate that Circuit City violated applicable law, which Cocchi asserts runs afoul of the rules requiring

7   that defendants bear the burden of prove with respect to affirmative defenses; and 7) a provision making all

8   arbitration proceedings confidential, thereby preventing employees from discovering repeated unlawful

9   employment practices on the part of the employer.  Finally, Cocchi argues that there so many defects in the

10  arbitration agreement, the offensive portions cannot be severed.  Rather, he asserts, the Court should

11  decline to enforce the arbitration agreement.

12         In its Reply, Circuit City argues that the arbitration agreement is not unconscionable.  First, it cites

13  *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003) for the proposition that

14  "the mere fact that an arbitration agreement is 'compulsory' no longer is enough to make it 'procedurally

15  unconscionable.'"  As examples of this rule, Circuit City cites to two cases in which Circuit City's

16  arbitration agreement was found to be enforceable, *Najd v. Circuit City Stores, Inc.*, 294 F.3d 1104 (9th

17  Cir. 2002) and *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2003).  Circuit City

18  goes on to argue that the provisions of the arbitration agreement are not substantively unconscionable.  In

19  reaching this conclusion, Circuit City relies on the version of the Rules and Procedures that was issued in

20  March 2005.

21  **III.    ANALYSIS**

22          **A.    Motion to Remand**

23                  **1.    Legal Standard for Sham Defendants**

24         There is a strong presumption against federal jurisdiction when a case is removed to federal court.

25  *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  A defendant has the burden of proving that

26

27  _____

28         [1] Where Circuit City prevails, costs imposed on the employee may not exceed the greater of $500 or 3% of the employee's annual salary.

**United States District Court**

For the Northern District of California

1   removal is proper and the requisite jurisdiction exists. *See id.*

2        The joinder of a non-diverse defendant is fraudulent or a "sham" and does not defeat jurisdiction if

3   the plaintiff fails to state a cause of action against the defendant, and the failure is obvious according to the

4   settled rules of the state. *See McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

5   "Fraudulent joinder is a term of art." *Id.* The analysis does not turn on the intent of the plaintiff but rather on

6   the validity of the legal theory being asserted against the non-diverse defendant. *See, e.g.*, *Davis v.*

7   *Prentiss Props. Ltd..*, 66 F. Supp. 2d 1112 (C.D. Cal. 1999). Courts should "look only to a plaintiff's

8   pleadings to determine removability." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)

9   (quoting *Gould v. Mut. Life Ins. Co.*, 790 F.2d 769, 773 (9th Cir. 1986)). However, where fraudulent

10  joinder is an issue, "the defendant seeking removal to the federal court is entitled to present the facts

11  showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339. "For example, a defendant must have

12  the opportunity to show that the individuals joined in the action cannot be liable on any theory." *Ritchey v.*

13  *Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).

14       In determining whether there is federal jurisdiction, it is proper for the Court to disregard the

15  unidentified Doe defendants where there is no information as to who they are, where they live, or their

16  relationship to the action. *McCabe*, 811 F.2d at 1339 (citing *Bryant v. Ford Motor Co.*, 794 F.2d

17  450,453 (9th Cir. 1986)).

18              **2.        Wrongful Discharge Claim against McGrath**

19       Defendants assert that Plaintiff's wrongful discharge claim against McGrath fails because, under

20  California law, such a claim can be asserted only against an employer and not a supervisor. The Court

21  agrees.

22       While at-will employment relationships generally may be terminated at the will of either party on

23  notice to the other, "there can be no right to terminate for an unlawful reason or a purpose that contravenes

24  fundamental public policy." *Gantt v. Sentry Insurance,* 1 Cal.4th 1083, 1094 (1992). This exception was

25  first recognized by the California Supreme Court in *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167

26  (1980). The California Supreme Court has recognized that "[w]hat is vindicated through the [*Tameny*]

27  cause of action is not the terms or promises arising out of the particular employment relationship involved,

28  but rather the public interest in not permitting employers to impose as a condition of employment a

United States District Court

For the Northern District of California

1    requirement that an employee act in a manner contrary to fundamental public policy." *Foley v. Interactive*

2    *Data Corp.*, 47 Cal.3d 654, 687 (1988). Thus, California courts have held that "employees discharged in

3    violation of fundamental public policy may bring an action against their employers sounding in tort." *Gantt*,

4    1 Cal.4th at 1098.

5        On the other hand, California courts have expressly held that a *Tameny* cause of action *may not*

6    be asserted against anyone other than the employer. *See Phillips v. Gemini Moving Specialists*, 63 Cal.

7    App. 4th 563 (1998). In *Phillips*, the plaintiff had worked as a driver for a moving company, Gemini. *Id*.

8    at 566. After plaintiff used the wrong kind of gas, the moving van wouldn't start and had to be towed. *Id*.

9    at 567. Gemini deducted the cost of the towing from the plaintiff's paycheck without his consent and then

10    terminated him. *Id*. The plaintiff asserted a *Tameny* claim against Gemini *and* an individual, Luni, who

11    acted on behalf of Gemini in processing the deduction from the plaintiff's paycheck, asserting that the

12    deduction of the towing costs violated a fundamental public policy. *Id*. at 568. The court held that although

13    the plaintiff stated a claim against Gemini, he had no cause of action against Luni. *Id.* The court explained

14    that Luni "did not commit the tort of wrongful discharge in violation of public policy because the tort has its

15    basis in the employer-employee relationship and Luni was not plaintiff's employer. Thus, plaintiff can have

16    no cause of action against Luni for wrongful termination." *Id*. at 576.

17        In concluding that individuals other than the employer cannot be sued for wrongful termination in

18    violation of public policy, the court in *Phillips* looked to two California cases that have addressed whether

19    *Tameny* claims can be asserted against anyone other than an employer, *Weinbaum v. Goldfarb, Whitman*

20    *& Cohen* (1996) 46 Cal. App. 4th 1310, and *Jacobs v. Universal Development Corp.* (1997) 53 Cal.

21    App. 4th 692. In *Weinbaum*, the plaintiffs were employees who alleged wrongful termination in violation of

22    public policy against their employer and conspiracy to terminate in violation of public policy against a third

23    party. *Id.* at 575-6 (citing *Weinbaum*, 46 Cal. App. 4th 1310). The court in that case held "that third

24    parties cannot commit the tort of wrongful discharge in violation of public policy because they are not

25    subject to the duty on which the tort is based." *Id*. In *Jacobs*, the plaintiff sued his employer and two

26    managerial employees alleging wrongful termination in violation of public policy. *Id*. (citing *Jacobs*, 53 Cal.

27    App. 4th 692 (1997)). "The *Jacobs* court affirmed the summary judgment granted to the individual

28

7

**United States District Court**
For the Northern District of California

1  defendants on the basis they could not be liable to Jacobs for tortious discharge because they were not his

2  employer." *Id*. at 575-76.

3        In this action, Plaintiff asserts a claim for wrongful termination in violation of public policy against

4  both his employer and an individual supervisor. While Plaintiff may state a claim as to Circuit City,[2] it is well

5  established under California law that he may not assert such a claim against an individual supervisor such as

6  McGrath. *See Phillips*, 63 Cal. App. 4th at 575-76.

7        The Court rejects Plaintiff's assertion that the viability of his *Tameny* claim against McGrath is a

8  question of first impression.  In making that argument, Plaintiff relies on cases involving statutory claims

9  under California's Fair Employment and Housing Act ("FEHA").  *See, e.g. Walrath v. Sprinkel,* 99 Cal.

10  App. 4th 1237 (2002) (holding that FEHA allows employees to bring claims for retaliation against

11  individual supervisors because relevant statutory provision allows claims against any "person").  Those

12  cases address the statutory intent of the legislature in adopting specific language in FEHA.  In contrast, the

13  limits imposed on *Tameny* claims are derived from California common law.  Therefore, Plaintiff's reliance

14  on the FEHA cases is misplaced.

15              **3.**     **Intentional Infliction of Emotional Distress Claim**

16        Defendant asserts that Plaintiff fails to allege in his complaint any actions that could support a claim

17  against McGrath for intentional infliction of emotional distress.  Defendant is correct.

18        It is well established under California law that a claim for intentional infliction of emotional distress is

19  barred by the exclusive remedy of the worker's compensation law where the claim is based on actions that

20  are a normal part of the employment relationship. *See Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.

21  3d 148, 160 (1987).  Worker's compensation exclusivity does not, however, bar claims for intentional

22  infliction of emotional distress that are based on "actions that are outside the normal part of the employment

23  environment." *Accardi v. Superior Court of Ventura County*, 17 Cal. App. 4th 341, 353 (1993)

24  (holding that claim for intentional infliction of emotional distress against supervisor was not barred where

25

26  ───────────────

27       [2] The Court assumes that the two policies articulated by Plaintiff in support of his *Tameny* claim are "fundamental" for the purposes of stating a valid *Tameny* claim.  The Court need not rule on that issue, however, because the only question before it is whether Plaintiff can state a valid *Tameny* claim as to McGrath

28  and the Court decides that issue on other grounds.

United States District Court

For the Northern District of California

plaintiff alleged that she had been subjected to years of sexual harassment).  Thus, "[t]he cases that have permitted recovery in tort for intentional misconduct causing disability have involved conduct of an employer having a 'questionable' relationship to the employment, an injury which did not occur while the employee was performing service incidental to the employment and which would not be viewed as a risk of the employment, or conduct where the employer or insurer stepped out of their proper roles." *Cole*, 43 Cal. 3d at 161.

Plaintiff in this action has alleged no facts indicating that McGrath's actions were outside the "normal part of the employment environment." *See Accardi*, 17 Cal. App. 4th at 353.  To the contrary, Plaintiff's allegations indicate that the conduct of which Plaintiff complains is just the sort of conduct California courts have found does not support a claim for intentional infliction of emotional distress in an employment setting.  Plaintiff alleges in his complaint that "[a]t all relevant times, each of the defendants . . . were the agents, servants and employees of their co-defendants, individually and collectively, and in doing the things herein alleged were acting within the scope of their authority as such agents, servants and employees and with the consent of their co-defendants."  Complaint at ¶ 5.  The only specific allegations against McGrath are that McGrath "told plaintiff he was terminated supposedly for 'bad customer service'" and that "McGrath made the decision to terminate him without ever discussing the incident with the plaintiff."  Complaint at ¶ 10.  These simply are not the sort of allegations California courts have found to constitute "outrageous" conduct that is outside of the normal employment relationship.  Therefore, the Court concludes that Plaintiff fails to state a claim for intentional infliction of emotional distress against McGrath.

### 4.    Negligent Infliction of Emotional Distress Claim

Plaintiff's claim against McGrath for negligent infliction of emotional distress fails for the same reason his claim for intentional infliction of emotional distress fails.  In particular, Plaintiff has alleged no facts that remove the claim from the ambit of the general rule that claims based on conduct that is a normal part of the employment relationship are barred by worker's compensation exclusivity.

United States District Court

For the Northern District of California

1    Because Plaintiff fails to state any claim against McGrath, the Court holds that McGrath is a sham

2  defendant.  Accordingly, removal is proper.[3]

3        **B.    Petition to Compel Arbitration**

4            **1.    Legal Standard**

5    Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract evidencing a

6  transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract .

7  . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

8  revocation of any contract."  9 U.S.C. § 2.  A defendant who is a party to a written arbitration agreement

9  that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration and

10  stay the proceeding pending resolution of the arbitration.  9 U.S.C. § 3.

11    The FAA "'leaves no place for the exercise of discretion by a district court, but instead mandates

12  that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration

13  agreement has been signed.'"  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th

14  Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).   Thus, the role of

15  the court is limited to determining: 1) whether a valid agreement to arbitrate exists; and 2) whether the

16  agreement encompasses the dispute at issue.  *Id*.

17    In determining whether there is a valid agreement, state law affirmative defenses, including

18  unconscionability, apply.  *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).

19  Under California law, an arbitration agreement is unconscionable if it is both procedurally and substantively

20  unconscionable.  *Id*.  (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d

21  778, 782 (9th Cir. 2002); *Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 102

22  (2000)).  A contract may be procedurally unconscionable if it involves oppression or surprise.  *Id*. at 1171.

23  A contract is oppressive where it results from "an inequality of bargaining power [that] results in no real

24  negotiation and an absence of meaningful choice."  *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519,

25  1532 (1997).  For example, in *Ingle*, the court concluded that the arbitration agreement was procedurally

26

27  ―――――――――――――

28    [3] Because the Court denies Plaintiff's Motion to Remand, it also denies Plaintiff's request for attorneys' fees and costs associated with that motion.

United States District Court

For the Northern District of California

1    unconscionable because of the inequality of bargaining power between the employer and the potential

2    employee, noting that job applicants could not modify the terms of the agreement, but rather, were required

3    to either take it or leave it. 328 F.3d at 1171.  A contract is

4    substantively unconscionable where it is "'so one-sided as to shock the conscience.'" *Id.* (citing *Kinney v.*

5    *United Health Care Servs., Inc.*, 70 Cal. App. 4th 1322, 1330 (1999).

6           Where an agreement contains an unconscionable provision, the court has the discretion, under

7    California law, to sever that provision and enforce the remainder of the agreement.  *Ingle*, 328 F.3d at

8    1180 (citations omitted).  However, where the "central purpose of the contract is tainted with illegality," the

9    court may refuse to enforce the contract in its entirety.  *Id.*  (quoting *Armendariz*, 24 Cal. 4th at 124).

10                          **2.      Applicable Rules and Procedures**

11          Since Cocchi signed the DRA, on November 1, 2001, the Rules and Procedures appears to have

12    been amended at least twice – once in January 2003 and again in March 2005.[4]   The Court must

13    determine which version of the Rules and Procedures applies to this dispute in order to evaluate the

14    arguments concerning unconscionability.  Circuit City looks to the Rule and Procedures that were adopted

15    in March 2005, a month *after* Cocchi was terminated.  Cocchi points to provisions in both the 2003 and

16    2005 Rules and Procedures, asserting that whichever version is considered, the Rules and Procedures are

17    unconscionable.  Cocchi also asserts that the 2001 version of the Rules and Procedures is unconscionable,

18    but does not provide a copy of that version, stating that he discarded it when the 2003 Rules and

19    Procedures replaced the earlier Rules and Procedures.  *See* Cocchi Decl., ¶ 6.

20          As a general rule, "[i]n evaluating the substance of a contract, courts must analyze the contract 'as

21    of the time [it] was made.'"  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003)

22    (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 487 (1982)).  The application of

23    this rule is complicated, however, by the fact that the Rules and Procedures contain a provision allowing for

24

25           [4]  The 2003 Rules and Procedures are attached as Exhibit B to the Cocchi Declaration.  Cocchi states
      in his declaration that the 2003 Rules and Procedures were provided to him in January 2003 and the footer on
26    the Rules and Procedures reflects that they were adopted in January 2003.  The 2005 Rules and Procedures
      are attached to the Miles Declaration as Exhibit B.  However, that declaration does not state when those Rules
27    and Procedures were adopted.  Rather, it merely states that Exhibit B is the "Rules and Procedures applicable
      to this dispute."  Miles Decl., ¶ 3.  The footer on the Rules and Procedures provided by Circuit City indicate
28    that they were adopted March 2005.

                                                        11

**United States District Court**

For the Northern District of California

1   amendment or termination of the arbitration agreement, Rule 19.  *See* Cocchi Decl., Ex. C (2003 Rules and

2   Procedures), Rule 19; Miles Decl., Ex. B (2005 Rules and Procedures), Rule 19.  In both the 2003 and

3   2005 versions of the Rules and Procedures, Rule 19 allows Circuit City to amend the Rules and

4   Procedures on a yearly basis, with thirty days notice to employees, provided that "all claims arising before

5   alteration or termination shall be subject to the Agreement and corresponding [Rules and Procedures] in

6   effect at the time" Circuit City receives the employee's Arbitration Request Form."  *Id*.

7          Application of Rule 19 is problematic in two respects.  First, it does not cover a situation in which a

8   claim has arisen but the employee has not filed an arbitration request (as is the case here).   Second, the

9   Ninth Circuit has ruled that this provision is unenforceable under California law.  *See Al-Safin v. Circuit*

10  *City Stores, Inc.*, 394 F.3d 1254, 1259 (9th Cir. 2005).

11         In *Al-Safin*, Circuit City argued that where an employee did not file an arbitration request but

12  instead filed an action in district court challenging his termination, the court should simply look to the most

13  recent Rules and Procedures, even though they were adopted after the employee had been terminated.

14  The Ninth Circuit rejected this position on two grounds.  First, it cited to two prior cases in which it had

15  held that Rule 19 was unenforceable under California law and held that the rule similarly was unenforceable

16  under Washington law – the applicable law in that case.  *Id*. at 1259 (citing *Circuit City Stores, Inc. v.*

17  *Mantor*, 335 F.3d 1101, 1107 (9th Cir. 2003) and *Ingle*, 328 F.3d at 1179).  Second, it concluded that

18  under Washington law, an employer's unilateral change in policy can only be effective if the employee

19  receives reasonable notice of the change and accepts the new rules.  *Id*. at 1260.  Because the employee

20  had already been terminated, the court found, the amendment was not effective.  Having reached this

21  conclusion, though, the court did not apply the Rules and Procedures that were in effect at the time Al-Safin

22  was hired, the 1997 Rules and Procedures.  *Id*. at 1259 n.3.  Rather, the court applied the 1998 Rules and

23  Procedures, on the basis that Al-Safin did not dispute that "Circuit City effectively implemented the 1998

24  [Rules and Procedures]."  *Id*.

25         Here, the Court concludes that the 2003 Rules and Procedures apply rather than either the 2005

26  Rules and Procedures or the 2001 Rules and Procedures.  First, Defendants do not dispute that the 2005

27  Rules and Procedures were adopted after Plaintiff was terminated.  Nor do Defendants cite to any case law

28  suggesting that the result reached in *Al-Safin* regarding the enforcement of a post-termination set of

United States District Court

For the Northern District of California

1    arbitration rules would be different under California law.  Second, it is evident that Plaintiff accepted the

2    2003 Rules and Procedures – which were adopted when he was still employed by Circuit City – as

3    binding.[5]  In particular, Plaintiff states in his declaration that he discarded the 2001 Rules and Procedures

4    when the 2003 Rules and Procedures were issued and no longer even has a copy of the earlier version.

5    *See* Cocchi Decl. at ¶ 13.  Thus, the Court looks to the revised 2003 Rules and Procedures rather than the

6    original 2001 Rules and Procedures, just as the court in *Al-Safin* applied the revised 1998 Rules and

7    Procedures rather than the 1997 Rules and Procedures that were in effect when the plaintiff in that case

8    was hired.

9                      **3.        Procedural Unconscionability**

10          Plaintiff argues that the arbitration agreement Circuit City seeks to enforce is procedurally

11   unconscionable.  The Court agrees.

12          The Ninth Circuit, applying California law, has repeatedly found that arbitration agreements such as

13   the one at issue here, in which the employee must sign the agreement as a condition of employment, are

14   procedurally unconscionable.  *See Ingle*,  328 F.3d at 1170; *Mantor*, 335 F.3d at 1106.  In *Mantor*, the

15   Court held that even though Circuit City had given the plaintiff an opt-out form allowing him not to

16   participate in the arbitration program, the plaintiff had not been given a *meaningful* opportunity to opt-out

17   because Circuit City threatened the plaintiff's job if he did not agree to arbitration.  335 F.3d at 1106.  The

18   Ninth Circuit expressly rejected Circuit City's reliance on *Najd* and *Ahmed* – the two cases on which

19   Circuit City relies in this case – on the basis that in those cases, the employees had been given a meaningful

20   opportunity to opt out of the arbitration program.  *Id*; *see also Ingle*, 328 F.3d at 1172 (rejecting Circuit

21   City's reliance on *Najd* and *Ahmed* for the same reason).  For the same reason, Circuit City's reliance on

22   *Najd* and *Ahmed* is misplaced here.  In particular, there is no indication that Cocchi was offered a

23   meaningful opportunity to opt-out of the arbitration program.  In contrast to *Najd*, *Ahmed*, and *Mantor*,

24   there is no indication that Cocchi was even given an opt-out form.  Accordingly, the arbitration agreement is

25   procedurally unconscionable.

26

27   _____

28          [5]  At oral argument, Plaintiff stipulated the 2003 Rules and Procedures is the appropriate version to
     consider.

**United States District Court**

For the Northern District of California

1    Circuit City's suggestion that the holding in *EEOC v. Luce, Forward, Hamilton & Scripps*, 345

2  F.3d 742 (9th Cir. 2003) somehow changed the law governing procedural unconscionability is incorrect.

3  That case does not address unconscionability, which is a question of California law.  Rather, it addresses

4  whether Congress, in enacting the Civil Rights Act of 1991, intended to permit arbitration of Title VII

5  claims where the arbitration agreement was a condition of employment.  While the court concluded that it

6  did, nothing in *Luce* suggests that a compulsory arbitration agreement (that is, one that might be

7  procedurally unconscionable) that also contains substantively unconscionable provisions could not be found

8  unenforceable under California law.

9                    **4.        Substantive Unconscionability**

10    The Court also concludes that the 2003 Rules and Procedures contain provisions that are

11  substantively unconscionable.

12    The Ninth Circuit has held that several earlier versions of Circuit City's Rules and Procedure are

13  unenforceable because they are unconscionable.  *See Circuit City Stores, Inc. v. Adams*, 279 F.3d 889,

14  896 (9th Cir. 2002) (holding that 1997 Rules and Procedures were substantively unconscionable, that

15  agreement was also procedurally unconscionable, and therefore, under California law, arbitration

16  agreement was unenforceable in its entirety); *Ingle*, 328 F.3d at 1173 (holding that 1998 Rules and

17  Procedures were substantively unconscionable, that agreement was also procedurally unconscionable, and

18  therefore, under California law, arbitration agreement was unenforceable in its entirety); *Al-Safin*, 394 F.3d

19  at 1262 (holding that 1998 Rules and Procedures were substantively unconscionable and therefore, under

20  Washington law, the agreement was invalid); *Mantor*, 335 F.3d at 1107 (holding that 2001 Rules and

21  Procedures were substantively unconscionable, that agreement was also procedurally unconscionable, and

22  therefore, under California law, arbitration agreement was unenforceable in its entirety).  In *Al-Safin*, the

23  court noted that many of the provisions that were deemed to be unenforceable in other proceedings were

24  modified in Circuit City's 2003 Rules and Procedures.  394 F.3d at 1257.  However, courts have not yet

25  determined whether Circuit City's 2003 Rules and Procedures are enforceable under California law.

26  Below, the Court reviews the provisions in the 2003 Rules and Procedures that Cocchi asserts make the

27  arbitration agreement unenforceable.

28                    **a.        Statute of Limitations**

1   The 2003 Rules and Procedures require that arbitration be initiated within one year of the date the

2   employee knew or should have known of the facts giving rise to the complaint.  Cocchi Decl., Ex. C (2003

3   Rules and Procedures), Rule 4(b)(i); *see also* Miles Decl., Ex. B (2005 Rules and Procedures), Rule

4   4(b)(i).  This provision is virtually identical to the provision that the Ninth Circuit has twice before held to be

5   substantively unconscionable.  *See Ingle*, 328 F.3d at 1175; *Adams*, 279 F.3 at 894.  In these cases, the

6   Ninth Circuit explained that the strict statute of limitations is substantively unconscionable because it

7   deprives plaintiffs of the benefit of the continuing violation doctrine in discrimination cases and benefits

8   Circuit City only.  *See Ingle*, 328 F.3d at 1175 (quoting *Adams*, 279 F.3d at 894-95).  For the same

9   reason, this provision in the 2003 and 2005 Rules and Procedures is substantively unconscionable.

10                    **b.      Arbitral Cost Sharing**

11  The filing fee provision in the 2003 Rules and Procedures is essentially the same as the filing fee

12  provision in the 2001 Rules and Procedures, which the Ninth Circuit held was substantively unconscionable

13  in *Mantor*, 335 F.3d at 1107-08.  There, the Court explained that the fee was not a true filing fee because

14  it was paid directly to Circuit City and further, that the waiver provision giving Circuit City, rather than a

15  disinterested third party, the discretion to waive the fee was "manifestly one-sided."  *Id*.  For the same

16  reason, the filing fee provision in the 2003 Rules and Procedures is substantively unconscionable.

17  The cost-sharing provision in the 2003 Rules and Procedures also is substantively unconscionable.

18  *See* Cocchi Decl., Ex. C (2003 Rules and Procedures), Rule 13.  Among other things, that provision

19  requires employees to bear the higher of $500 or 3% of their annual salary to pay arbitration costs.  It also

20  allows the arbitrator to award the costs of arbitration to the prevailing party.  Although these provisions are

21  a modification of the earlier cost-splitting provisions that were found to be unconscionable in *Ingle* and

22  *Mantor*, they continue to expose the employee to fees that would not be imposed on a plaintiff in a court.

23  *See Ingle*, 328 F.3d at 1177-78.  Therefore, they are substantively unconscionable.

24                    **c.      Unilateral Right of Modification and Termination**

25  The 2003  Rules and Procedures contain a unilateral right to alter or terminate the agreement.  *See*

26  Cocchi Decl., Ex. C (2003 Rules and Procedures), Rule 19; Miles Decl., Ex. B (2005 Rules and

27  Procedures), Rule 19.  As discussed above, on several occasions the Ninth Circuit has found this provision

28  to be unenforceable.  Nothing in the 2003 version of Rule 19 changes that result.

**United States District Court**
For the Northern District of California

1                              **d.**       **Limited Discovery**

2        Cocchi asserts that the 2003 and 2005 Rules and Procedures impose limits on discovery that are

3  substantively unconscionable.   In particular, Rule 8 of the Rules and Procedures limits parties to 20

4  interrogatories and 3 depositions, unless the arbitrator finds that there is "substantial need" to exceed these

5  limits and additional discovery will not be "overly burdensome" or cause undue delay.  Cocchi Decl., Ex. C

6  (2003 Rules and Procedures), Rule 8; *see also* Miles Decl., Ex. B (2005 Rules and Procedures), Rule 8.

7  Although none of the cases that have addressed the Circuit City Rules and Procedures have addressed this

8  provision, Cocchi relies on a 2004 California case in which limitations on discovery were found to be

9  substantively unconscionable. *See Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 716 (2004).

10        In *Fitz*, the arbitration rules limited the parties to "the sworn deposition statements of two

11  individuals and, in addition, any expert witnesses expected to testify at the hearing" unless the arbitrator

12  found "compelling need" for additional discovery. *Id*. at 709 (quoting arbitration agreement). The court,

13  while acknowledging that discovery may be limited in arbitration proceedings, held that such limited

14  discovery was substantively unconscionable because it did not "permit discovery necessary necessary to

15  make a fair hearing possible." *Id*. at 717.  In reaching this conclusion, the court emphasized that the rule

16  allowed almost no written discovery and that the "safety-valve" of allowing additional discovery where

17  there is compelling need was inadequate because the hurdle for obtaining such discovery was so high. *Id*.

18  The court also noted that the burden of such limits is greater for a plaintiff in an employment action than it is

19  for the defendant because the defendant generally possesses the majority of the evidence in the case. *Id.* at

20  916.

21        The Court concludes that *Fitz* is distinguishable from the facts here and therefore does not support

22  the conclusion that Rule 8 unconscionably limits discovery.  While it is true that discovery is limited under

23  the 2003 Rules and Procedures, the limitations here are not as severe as those in *Fitz*.  First, the Rules and

24  Procedures allow interrogatories and three depositions rather than only two.  Second, the arbitrator may

25  allow additional discovery if there is "substantial" rather than "compelling need."  As a result, applying *Fitz*

26  to the facts here would be an expansion of the holding of that case.  For this reason, and because none of

27  the many decisions addressing Circuit City's Rules and Procedures has identified discovery limits as a

28  problem, the Court concludes that Rule 8 is not substantively unconscionable.

United States District Court

For the Northern District of California

### e.      Prohibition of Class Actions

Cocchi argues that Rule 9 of the Rules and Procedures, prohibiting the arbitrator from consolidating the claims of different employees into one action and class actions generally, is substantively unconscionable. *See* Cocchi Decl., Ex. C (2003 Rules and Procedures), Rule 9(f)(ii); *see also* Miles Decl., Ex. B (2005 Rules and Procedures), Rule 9(f)(ii). This question was resolved in *Ingle*, in which the Ninth Circuit held that this provision in the 1998 Rules and Procedures was substantively unconscionable. *Ingle*, 328 F.3d at 1175-76. In that case, the court relied on the California court of appeal's decision in *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094 (2002). *Id*. In *Szetela*, the court concluded that a provision barring class actions in a consumer contract of adhesion was unconscionable because it represented an effort on the part of the defendant to create "virtually immunity" from class actions. 97 Cal. App. 4th at 1100. The *Szetala* court noted that plaintiffs such as the one in that case typically sought to recover such small amounts that legal action by any individual plaintiff was unlikely. *Id*.

The Court rejects Circuit City's assertion that *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) supports a contrary result. In that case, the Supreme Court addressed whether claims brought under the Age Discrimination in Employment Act (ADEA) could be subject to arbitration. *Id*. at 23. One of the arguments advanced in that case was that the arbitration procedures at issue did not provide for class actions or allow the arbitrator to grant equitable relief. *Id*. at 31. The Court rejected this argument, noting that arbitrator's *can* fashion equitable relief and further, that even if arbitration procedures do not allow for class actions, this does not mean Congress intended to exempt ADEA claims from arbitration. *Id*. The issue here is not whether Congress intended to permit arbitration under a particular federal statute but rather, what types of provisions are considered substantively unconscionable under California law. In short, *Gilmer*, which was decided long before *Ingle*, is not inconsistent with the holding in *Ingle* that the provision in the Rules and Procedures prohibiting class actions is substantively unconscionable under California law.

The Court also rejects Circuit City's reliance on *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003). There, the parties disputed whether the arbitration agreement allowed class actions. *Id*. at 459. The Court held that this was a question of contract interpretation, to be decided by the arbitrator. *Id*.

17

**United States District Court**
For the Northern District of California

1    at 451.  It did not reach the question of when an arbitration provision might be substantively unconscionable

2    under state law.

3         Finally, the Court does not find that the recent decision of the California Supreme Court in

4    *Discover Bank v. Superior Court*, Case No. S113725 (June 27, 2005) gives rise to a different result.  In

5    that case, the California Supreme Court held that a provision in a consumer contract of adhesion that was

6    "virtually identical" to the one in *Szetela*, *see* Slip Op. at 5, was substantively unconscionable.  In *Discover*

7    *Bank*, as in *Szetela*, the court reasoned that a class action waiver is unconscionable where "disputes

8    between the contracting parties predictably involve small amounts of damages, and when it is alleged that

9    the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers

10   of consumers out of individually small sums of money."  Slip. Op. at 17.  The court noted, however, that it

11   did "not hold that all class action waivers are necessarily unconscionable."  *Id*.

12        While the class action waiver here is not contained in a consumer contract like those in *Szetela* and

13   *Discover Bank*, there is nothing in *Discover Bank* that casts doubt on the Ninth Circuit's decision in *Ingle*.

14   To the contrary, the California Supreme Court in *Discover Bank* approved the holding of *Szetela* – the

15   very case on which the Ninth Circuit relied in *Ingle*.  Accordingly, this Court is bound by the Ninth Circuit's

16   holding in *Ingle* that the class action waiver in Circuit City's Rules and Procedures is substantively

17   unconscionable under California law.

18                      **f.      Allocation of Burden of Proof**

19        Cocchi asserts that Rule 9(c) of the Rules and Procedures is substantively unconscionable because

20   it requires the employee to "prove that [Circuit City's] conduct with respect to the [employee] was a

21   violation of applicable law."  Cocchi Decl., Ex. C (2003 Rules and Procedures), Rule 9(c); *see also* Miles

22   Decl., Ex. B (2005 Rules and Procedures), Rule 9(c).  According to Cocchi, this is substantively

23   unconscionable because it requires the Plaintiff to bear the burden of proof not only as to his own claims but

24   also as to Defendants' affirmative defenses.  Plaintiff cites no authority on this issue.  However, the Court

25   concludes that a sensible reading of this provision does not support Plaintiff's argument.  In the absence of

26   any express language suggesting  the provision shifts the burden with respect to affirmative defenses, the

27   Court finds that the provision is not substantively unconscionable.

28                      **g.      Confidentiality Provision**

**United States District Court**
For the Northern District of California

1   Cocchi asserts that the confidentiality provision found in Rule 9(g) of the Rules and Procedures puts

2   employees at a disadvantage because they are unable to learn about repeated misconduct. *See* Cocchi

3   Decl., Ex. C (2003 Rules and Procedures), Rule 9(g); *see also* Miles Decl., Ex. B (2005 Rules and

4   Procedures), Rule 9(g). Cocchi is correct that confidentiality provisions have been found to substantively

5   unconscionable under California law. *See Ting v. AT&T*, 319 F.3d 1126, 1152 (9th Cir. 2003).

6   However, Circuit City is correct that this rule does not apply here because Rule 12 allows employees who

7   bring arbitration claims to obtain copies of decision from past arbitrations with the name of the claimant

8   deleted. Cocchi Decl., Ex. C (2003 Rules and Procedures), Rule 12; *see also* Miles Decl., Ex. B (2005

9   Rules and Procedures), Rule 12. As a result, the confidentiality provision at issue here is not substantively

10   unconscionable.

11          **5.        Severability**

12          As discussed above, where an arbitration agreement is found to be procedurally unconscionable

13   and to contain provisions that are substantively unconscionable, the court has discretion to sever the

14   objectionable provisions or, where the "central purpose of the contract is tainted," to refuse the enforce the

15   entire agreement.

16          Here, there are at least four provisions in the 2003 Rules and Procedures that are substantively

17   unconscionable: 1) the one-year statute of limitations; 2) the cost-sharing provision; 3) the unilateral right to

18   modify or terminate the agreement; and 4) the prohibition on class actions. In *Mantor*, the Court found that

19   where the provisions on the same four issues in the 2001 Rules and Procedures were substantively

20   unconscionable, the entire agreement was unenforceable. 335 F.3d at 1107. The same result is

21   appropriate here. The Court finds that the 2003 Rules and Procedures are unenforceable.

22

23

24

25

26

27

28

**III.    CONCLUSION**

For the reasons stated above, the Motion to Remand is DENIED.  The Petition to Compel Arbitration also is DENIED.

IT IS SO ORDERED.

Dated: July 15, 2005

/s/ Joseph C. Spero
JOSEPH C. SPERO
United States Magistrate Judge

**United States District Court**
For the Northern District of California

20