UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH COCCHI,<br><br>        Plaintiff,<br><br>    v.<br><br>CIRCUIT CITY STORES, INC., ET AL.,<br><br>        Defendants.<br>_____/ | No. C-05-1347 JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT OF DEFENDANT CIRCUIT CITY**<br>**[Docket No. 56]** |

## I.  INTRODUCTION

Plaintiff, Joseph Cocchi, filed this wrongful termination action against his former employer, Circuit City, and his supervisor, James McGrath. Remaining in the case are two claims against Circuit City for wrongful termination in violation of public policy. The first claim is based on article I, § 1 of the California Constitution, guaranteeing a right to self-defense ("the Self-Defense Claim"). The second claim is based on California Labor Code § 6310, governing safety complaints in the work place ("the Section 6310 Claim"). Defendant Circuit City now brings a Motion for Summary Judgment ("the Motion") in which it asserts that it is entitled to summary judgment as to both claims. A hearing on the Motion was held on Friday, March 17, 2006, at 9:30 a.m. For the reasons stated below, the Court concludes that Circuit City is entitled to summary judgment on the Section 6310 Claim, but that it is not entitled to summary judgment as to the Self-Defense Claim.

## II.  BACKGROUND

### A.  Facts

Joseph Cocchi was employed by Circuit City in San Mateo in the car audio installation and sales department from November 2001 to January 14, 2004. Complaint at ¶¶ 6, 10, Motion at 3-4

(Defendant's Undisputed Facts").[1]  On January 6, 2004, an altercation between Cocchi and a group of customers occurred in Cocchi's department.  Motion at 4 (Defendant's Undisputed Facts).  According to Cocchi's account, four customers entered the department at around 7:45 p.m. asking to purchase a part.  Declaration of Darrell Berry in Support of Motion for Summary Judgment of Defendant Circuit City Stores, Inc. ("Berry Decl."), Ex. B (Cocchi Depo.) at 70-71.  When Cocchi told them he could not sell them the part because it was locked in the installation bay, which was already closed, the customers became upset.  *Id*. at 71.  One of the customers hit Cocchi in the face and Cocchi put his hand up and "pushed his chest back as self defense."  At least two of the customers began to "crowd" Cocchi.  *Id*. at 72-73.  At that point Cocchi was telling the customers to "do something or just leave," using a loud voice to attract the attention of another manager.  *Id*. at 73.  At the same time, he had his hand up "as a defense" and was backing into a corner.  *Id*.  Another manager, Nick Lyles, then entered the department, at which point the four customers left.  *Id*.

After the incident, Cocchi wrote a statement describing the incident, at the instruction of Nick Lyles.  *Id*. at 84 & Depo. Ex. 9.  In addition, some of the events were captured on videotape by a Circuit City security camera.  Berry Decl., Ex. E.

Some time later, Cocchi told supervisors Rich Margado and Guillermo Rodriguez that he "didn't feel safe on the floor, and it would have been a better situation if there was more employees, if there was more management on the floor, and it wouldn't have got as hasty as it did."  Berry Decl., Ex. B (Cocchi Depo.) at 131. [2]

A day or two after the incident, Cocchi was placed on administrative leave pending investigation of the incident.  *Id*. at 112.  One week later, Cocchi received a call from Rodriguez asking him to come in to meet with supervisor McGrath.  *Id*. at 113-114.  Cocchi met with McGrath,

---

[1] The parties did not provide the Court with a joint statement of undisputed facts.  Instead, Circuit City has provided a list of facts that it characterizes as "undisputed."  Plaintiff has responded by disputing many of these "undisputed facts."  The Court relies on the facts that it finds are actually undisputed, and, where there is conflicting evidence, draws all reasonable inferences in favor of Plaintiff, as required on summary judgment.

[2] In his deposition, Cocchi was asked if he had ever made any safety complaints, and Cocchi responded that he had not.  *See* Berry Decl., Ex. B at 119.  Later, Cocchii clarified that he had understood the question to refer to formal, written complaints.  *See* Declaration of Joseph Cocchi in Opposition to Defendant's Motion for Summary Judgment ("Cocchi Decl.") at ¶ 34.

2

who gave Cocchi an envelope with a paycheck and told him he was terminated. *Id*.at 114.  When Cocchi asked the reason, McGrath told him he was being terminated for bad customer service. *Id*.

Cocchi testified in his deposition that he did not know who made the decision to terminate him. *Id*. at 120. McGrath, however, testified that the ultimate decision was made by district manager Ron Kennedy. Berry Decl., Ex. C (McGrath Depo.) at 63-64. According to McGrath, his own role in the investigation was to gather facts about the incident. Declaration of Anthony O'Brien in Opposition to Defendant's Motion for Summary Judgment ("O'Brien Decl."), Ex. 3 (McGrath Depo.) at 49. McGrath testified that he also asked Rodriguez to participate in the investigation because Rodriguez was Cocchi's supervisor. *Id*. at 53.[3] According to McGrath, he reviewed Cocchi's written statement, watched the videotape of the incident several times, and spoke to Nick Lyles about the incident  *Id*. at 50-51. In addition, he testified that he had reviewed a written statement by Rodriguez.[4] *Id*. at 50. On the basis of these materials, he recommended to Kennedy that Cocchi be terminated. *Id*. at 64.

Although there is evidence in the record that Cocchi had received up to three written reprimands while employed at Circuit City, *see* Berry Decl., Ex. B (Cocchi Depo.) at 63-65, McGrath testified that his recommendation that Cocchi be terminated was based solely on the fact that "there was a physical altercation between the employee and a customer and a written statement." *Id*. He also testified that there was a "consensus" among McGrath, Human Resources

---

[3] Rodriguez disputes that he was asked to participate in the investigation. O'Brien Decl., Ex. 5 (Rodriguez Depo.) at 31. However, he states in a declaration filed in support of Plaintiff's opposition that he participated in a meeting on January 7, 2004 with McGrath and another manager to review the store surveillance tape. O'Brien Decl., Ex. 6 (Declaration of Guillermo Rodriguez) at ¶ 7. In the declaration, Rodriguez states that in the meeting he expressed the opinion, based on the videotape, that Cocchi appeared to be acting in self-defense. *Id*. According to Rodriguez, McGrath "did not seem to want to hear my perception of the video [and] insisted that Mr. Cocchi started the fight and that the four individuals did not act in a threatening manner." *Id*. At oral argument, Plaintiff conceded that there is no evidence in the record that Rodriguez was a decision-maker in the decision to terminate him and stipulated that he is not contending that Rodriguez is a decision-maker for the purposes of the Motion.

[4] It is not clear from the record what statement this testimony refers to. The record contains two statements by Rodriguez. *See* Exhibits A and B to Declaration of Guillermo Rodriguez ("Rodriguez Decl."), attached as Exhibit 6 to O'Brien Decl. Both declarations address statements purportedly made by Plaintiff after the altercation.  Neither statement refers to any safety complaint made by Plaintiff.

3

representative Jen West, and an individual named Chris Ostander on this issue.[5] Berry Decl., Ex. C at 62. Similarly, Jen West testified that the sole reason she and McGrath recommended termination was that Cocchi was involved in an altercation with a customer that involved touching a customer. *Id*. at 40. West testified that Cocchi's actions were inconsistent with Circuit City policy because he should have removed himself from the situation. *Id*. at 94.

Ron Kennedy, who made the decision to terminate Cocchi, states in his declaration that Circuit City has a "consistent policy of terminating Associates who become involved in altercations with customers or co-workers, regardless of who initiates the dispute." Declaration of Ron Kennedy in Support of Motion for Summary Judgment of Defendant Circuit City Stores, Inc. ("Kennedy Decl."), ¶ 6, attached as Exhibit A to Berry Decl. Kennedy states that "Associates are expected to walk away from the dispute or call a manager for assistance with the customer or co-worker." *Id*. According to Kennedy, he agreed with West and McGrath that Cocchi should be terminated based on his participation in the altercation. *Id*., ¶ 7. Kennedy also states that when he approved the termination, he was unaware of any comments made by Cocchi regarding safety. *Id*., ¶ 8.

## B. The Motion

Circuit City asserts that it is entitled to summary judgment on both of Cocchi's remaining claims. First, it argues that under California law there is no claim for termination in violation of public policy based on the right to self defense. In support of this point, Circuit City points to the requirement that a wrongful discharge claim based on violation of public policy must be based on a policy that inures to the benefit of the public. Circuit City argues that the right of self-defense does not meet this requirement because it benefits only the individual that engages in self-defense and not the public at large. Circuit City further asserts that the right to self-defense is not clearly delineated in the California Constitution or firmly established.

Second, Circuit City asserts that Cocchi's Section 6310 Claim fails because there is no evidence that Cocchi made a safety complaint, and even if he did, there is no evidence any

---

[5] It is not clear in the record whether Ostander played a role in the termination. According to Jen West, the only individuals involved in the decision to terminate Cocchi were herself, James McGrath and Ron Kennedy. Berry Decl., Ex. D (West Decl.) at 31-32.

4

complaint was considered in making the decision to terminate Cocchi.  Circuit City cites first to Cocchi's testimony in his deposition that he had not made any safety complaints.  *See* Berry Decl., Ex. B at 119.  It asserts further that Cocchi's statement to Margado and Rodriguez that he did not feel safe was too vague to qualify as a safety complaint.  Finally, Circuit City argues that there is no evidence of any causal connection between Cocchi's statements and his termination.

In his Opposition, Cocchi asserts that public policy based on the right to self defense is clearly delineated in the constitution, fundamental and well-established, and inures to the benefit of the public.  In support of this position, Cocchii emphasizes the particular circumstances of this case, in which retreat, he asserts, was not possible and calling a manager would have required Cocchi to let his guard down, thus making him vulnerable to another attack by his assailant.  With respect to the Section 6310 Claim, Cocchi argues that his statements were sufficient to qualify as a safety complaint.  He also points to evidence that McGrath had a history of prior disagreements with Cocchi and that McGrath never talked to Cocchi about the incident in support of his position that there is a jury question with respect to the Section 6310 Claim.  Finally, Cocchi objects to Kennedy's declaration on the basis that it contains statements that are not based on personal knowledge and Kennedy does not identify the evidence on which his opinions are based.  Similarly, Cocchi asks that testimony in West's deposition regarding Circuit City's policies and other cases in which employees have been terminated for altercations with customers be stricken on the basis of the best evidence rule.[6]

**III.   ANALYSIS**

    **A.   Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In order to prevail, a party moving for summary judgment must show the absence of a

---

[6] The Court overrules Plaintiff's objections regarding the Kennedy Declaration and the West deposition testimony.  In both cases, the testimony is based on the first-hand recollections of the witnesses and is admissible.

5

genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id.* at 323. On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 255 (1986).

### B.     Self-Defense Claim

Cocchi asserts a claim against Circuit City for termination in violation of public policy, pointing to the right to self-defense contained in the California Constitution. *See* Cal. Const. art. I, § 1. Circuit City takes the position that the right to self-defense does not give rise to a public policy claim under California law. There are no published California cases that directly address this issue. Therefore, the Court must predict, based on existing California precedent, what the California Supreme Court would hold. *See Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir.1986), *modified at* 810 F.2d 1517 (9th Cir.1987). The Court concludes that a public policy claim based on the right to self defense, while narrow in scope, is consistent with California law. Further, the Court concludes that there is a factual dispute as to Cocchi's Self-Defense Claim that precludes summary judgment.

In *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 178 (1980), the California Supreme Court held that an employee may be entitled to a tort remedy for wrongful discharge where the termination "contravenes public policy." In that case, the plaintiff, who was an at-will employee, sued his former employer after he was terminated for his refusal to participate in an illegal scheme to fix retail gas prices. *Id.* at 172. Rejecting the defendant's assertion that the wrongful discharge claim sounded only in contract, the court explained that "an employer's obligation to refrain from discharging an employee who refuses to commit a criminal act does not depend upon any express or implied promise[s] set forth in the [employment] contract . . . but rather reflects a duty imposed by law upon all employers in order to implement the fundamental public policies" of the state. *Id.* at 176. This duty applies regardless of whether or not the employee is an at-will employee. *See Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 667 (1988).

6

While *Tamany* involved a situation in which an employee was terminated for refusing to violate a statute, public policy claims may also arise where an employee is terminated for exercising a constitutional or statutory right. *Green v. Ralee Eng'g*, 19 Cal. 4th 66, 76 (1998). A four-part test is applied to determine whether a particular policy supports a wrongful discharge claim:

> The policy must be (1) delineated in either constitutional or statutory provisions; (2) public in the sense that it inures to the benefit of the public rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental.

*Stevenson v. Superior Court*, 16 Cal. 4th 880, 900 (1997) (citations omitted).

The court's analysis in *Semore v. Pool*, 217 Cal. App. 3d 1087 (1990), addressing the right to privacy as the basis for a public policy claim, is instructive.[7] In *Semore*, the plaintiff was terminated because he refused to submit to a pupillary reaction eye test administered by his employer to determine if he was under the influence of drugs. *Id*. at 1092. The plaintiff sued for wrongful termination in violation of public policy, citing to article I, § 1 of the California Constitution. *Id*. That provision lists privacy as an "inalienable right." Cal. Const., art. I, § 1. The court first held that the constitutional right to privacy applies not just to the government but also private employers: "[s]ince privacy can be invaded by government agencies, businesses or individuals, the court and commentators agree that the constitutional provision provides at least some protection against non-governmental action." *Id*. The court went on to address whether the right to privacy serves a public interest. *Id*. at 1096. In addressing this issue, the court balanced the employee's privacy expectations against the employer's interests in limiting privacy. *Id*. The court rejected the position of the dissent that the right not to participate in the drug test benefitted the employee alone, noting that privacy is a fundamental interest of our society and the assertion of the right by individuals benefits all Californians. *Id*. at 1097. In support of this conclusion, the court noted that it doubted a contract requiring an employee to forego his right to privacy would be enforceable. *Id*. The court

---

[7] *Semore* was decided before *Stevenson* and does not address the issue in the framework of *Stevenson's* four part test. However, the considerations articulated in *Semore* are consistent with the factors listed in *Stevenson*.

concluded by holding that the plaintiff stated a public policy claim based on the alleged violation of his right to privacy. *Id.*

In contrast, in *Grinzi v. San Diego Hospice*, 120 Cal. App. 4th 72 (2004), the court held that the plaintiff's public policy claimed based on the First Amendment of the United States Constitution failed. There, the plaintiff was fired because she was a member of an organization of which the employer disapproved. *Id.* at 78. The plaintiff asserted a wrongful termination claim based on the First Amendment. *Id.* The court rejected the claim, however, concluding that because the First Amendment protects only against *government conduct* and not that of private employers, the constitutional provision on which the plaintiff relied did not adequately delineate the public policy at issue. *Id.* at 80. The court noted that a contrary result would be unreasonable because it would require employers "to realize they must comply with requirements from which they are exempt or suffer the possibility of tort liability." *Id.* at 81-82. The court went on to distinguish *Semore* and the right of privacy:

> The First Amendment free speech rights are distinguishable from the California constitutional right to privacy because the privacy right is "an inalienable right which may not be violated by anyone" including private parties. . . . As the right to privacy extends to acts of private employers, it provides "a fundamental principle of public policy" sufficient to state a cause of action for wrongful termination against a private employer.

*Id.* at 82 (citations omitted).

Here, as in *Semore*, Cocchi relies on article I, § 1 of the California Constitution, which provides as follows:

> § 1. Inalienable rights
>
> Section 1. All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

Cal. Const. art. I, § 1. The right to "defend[] life" is listed along with privacy as an "inalienable right" and on that basis, the Court concludes that this right is fundamental and well-established. *See also* Cal. Civ. Code § 50 (providing, in part, that "[a]ny necessary force may be used to protect from wrongful injury the person or property of oneself . . ."); Cal. Penal Code § 693 (permitting

8

1   "resistance sufficient to prevent [an] offense by the party about to be injured . . .[t]o prevent an
2   offense against his person").

3      A more difficult question is whether the right to self-defense is clearly delineated.  It is clear
4   from the plain language of the California Constitution that the right to self defense, unlike the First
5   Amendment right to free speech, applies to private employers as much as it does to public entities
6   and thus, *Grinzi* is not on point.  Circuit City, however, argues that nonetheless, the parameters of
7   the right to self-defense are not sufficiently delineated to put an employer on notice that it could be
8   subject to liability for a policy that imposes a blanket prohibition on employees regarding physical
9   contact with customers.  Circuit City points to the absence of any California case in which a public
10  policy claim based on self-defense has been permitted in support of its position.

11     The Court does not take Circuit City's argument lightly.  The Court recognizes that the
12  public policy exception is exceedingly narrow.  As Circuit City correctly argues, the public policy at
13  issue must be sufficiently described in the law or constitutional provision at issue "to enable an
14  employer to know the fundamental public policies that are expressed in that law."  *Sequoia Ins. Co.*
15  *v. Superior Court*, 13 Cal. App. 4th 1472, 1480 (1993).  The test, however, is not whether there is a
16  California case that has recognized the right.  Rather, this Court must predict how the California
17  Supreme Court would rule.  The Court concludes that under article I, § 1 of the California
18  Constitution, an employee, at a minimum, has a fundamental right to defend himself from physical
19  injury where it is not possible to avoid the altercation, either by retreating or summoning help.  Any
20  other reading of the California Constitution would amount to holding that employers may deprive
21  their employees of their right to self-defense altogether.  Such a holding cannot be squared with the
22  fact that the right to self-defense is enshrined in the California Constitution as a fundamental right.
23  Therefore, the Court concludes the right to self-defense is sufficiently delineated, under the very
24  specific facts of this case, to put Circuit City on notice of the public policy at issue.

25     The next question the Court must address is whether the right to self-defense inures to the
26  public benefit. It is in this context that California courts have addressed the balance between the
27  needs of the individual, the needs of the employer and the interests of the public.  In conducting this
28  balancing, courts ask, among other things, whether a private agreement between an employer and

9

employee whereby the employee waived the right at issue would be unenforceable as violating public policy. *See Semore*, 217 Cal. App. 3d at 1097; *Foley*, 47 Cal. 3d at 667 n. 7. Applying this approach, the Court concludes that the right to self-defense, at least under the circumstances here, where there is evidence from which a jury could reasonably conclude that it was not possible for Cocchi to retreat or call a manager, inures to the public benefit.

In support of this conclusion, the Court looks to California Civil Code § 3513, which provides as follows:

> Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.

Thus, in order for the Court to hold that Cocchi's Self-Defense Claim fails as a matter of law, it would have to conclude that his right to self-defense is for purely private benefit and therefore, is waivable. In *Kentucky Fried Chicken of California, Inc. v. Superior Court of Los Angeles County*, 14 Cal. 4th 814 (1997), however, it is evident that the California Supreme Court did not view the right to self-defense as purely private. *See* 14 Cal. 4th at 829.

In that case, a robber held up a Kentucky Fried Chicken restaurant ("KFC") by pointing a gun at one of the patrons and demanding cash. *Id*. at 819. The cashier did not immediately cooperate, causing the robber to become agitated. *Id*. The patron later sued KFC, asserting that cashiers have a duty to comply with the robber's demands to protect patrons. *Id*. The court disagreed, finding that there was no such duty. *Id*. at 829. In reaching this conclusion, the court cited with approval to case law from numerous other jurisdictions in which courts have held that the right to self-defense is in the public interest. *See, e.g., id*. at 824-825 (quoting Indiana appellate decision: "There is and must continue to be, a great public interest in the prevention of crime and in the speedy apprehension of criminals. To that end the victim of a crime, as vicious as armed robbery, during the course of such criminal act, is excused, justified and to be held privileged from ordinary resistance which might otherwise cause actionable damage"). The court concluded by stating that "[i]t is enough to observe that recognizing a duty to comply with an unlawful demand to surrender property would be inconsistent with the public policy reflected in article I, section 1 of the California Constitution and Civil Code § 50." *Id*. at 829.

While *Kentucky Fried Chicken* involved a somewhat different set of circumstances, the California Supreme Court made clear in that case that it views the right to self-defense as inuring to the public benefit – *even* where the employee's actions arguably endangered a third party. In this case, there is no evidence in the record that Plaintiff's actions put any third party in jeopardy. Thus, taking the approach of the California Supreme Court in *Kentucky Fried Chicken*, the public policy supporting the right to self-defense arguably is stronger under the facts here than in that case. For that reason, the Court concludes that an employer may not require an employee to completely waive his right to self defense. In particular, an employer may be liable for termination in violation of public policy where the termination is based on the employee's exercise of his right to defend himself where it was not possible for the employee to avoid physical injury to his person by retreating or summoning help. Because there are material issues of fact regarding whether Plaintiff can establish such a claim, summary judgment is denied as to the Self-Defense Claim.

### C. Section 6310 Claim

Circuit City asserts that it is entitled to summary judgment on Cocchi's Section 6310 Claim because Cocchi did not make any safety complaints and, even if he did, there is no evidence that his termination was based on those complaints. The Court concludes that there is no evidence from which a jury could reasonably conclude that Cocchi's termination was a result of his statements concerning safety and therefore, the Circuit City is entitled to summary judgment on this claim. *See Turner v. Annheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1258 (1994) (holding that summary judgment was proper where evidence was not sufficient to support reasonable inference of causal nexus between employee's past complaints about employer's illegal activities and employee's subsequent termination).

The only evidence in the record regarding safety complaints is Cocchi's testimony that he told Rodriguez and Margado that he would have felt safer if there were more associates on the floor. There is no evidence, however, that these statements were ever passed on to Kennedy, West, or McGrath. Indeed, the only evidence in the record that connects Cocchi's statements about safety to his termination is the evidence that McGrath asked Rodriguez to participate in the investigation and that Rodriguez met with McGrath to view the videotape. There is no testimony by Rodriguez or

11

anyone else, though, that Rodriguez ever mentioned the statements to anyone. Nor is there any evidence that Rodriguez had any decision-making authority regarding Cocchi's termination, as Plaintiff conceded at oral argument. Therefore, the Court concludes that Cocchi has failed to meet his burden on summary judgment as to this claim.

The Court rejects Cocchi's reliance on *Reeves v. Safeway Stores, Inc.*, 121 Cal. App. 4th 95 (2004). In that case, the court rejected a defendant employer's assertion that it was entitled to summary judgment on the basis that the individual who made the ultimate decision to terminate the plaintiff did not know about the plaintiff's safety complaints. *Id*. at 107. Rather, it held that "ignorance of a worker's protected activities or status does not afford a categorical defense unless it extends to *all* corporate actors who contributed materially to an adverse employment decision." *Id*. at 109. It went on to hold that there was evidence that the supervisor to whom the safety complaints were made had played a material role in the decision to terminate the employee and therefore, summary judgment was not proper. *Id*. at 110.

Here, Cocchi does not even attempt to argue that Rodriguez or Margado played a "material" role in the decision to terminate him, nor is there evidence from which a jury could reasonably conclude these individuals played such a role. Instead, Cocchi points to the fact that he had a history of disagreements with *McGrath*, citing to the written reprimands he had received while at Circuit City. He also points to evidence of what he asserts was an inadequate investigation of the facts surrounding the altercation that led to his termination. This evidence, however, does not establish a causal nexus between Cocchi's safety complaints and his termination. Therefore, Circuit City is entitled to summary judgment on this claim.

**III. CONCLUSION**

For the reasons stated above, summary judgment is DENIED as to Plaintiff's Self-Defense Claim. Summary Judgment is GRANTED as to Plaintiff's Section 6301 Claim. The case is referred

to Magistrate Judge Edward Chen for a settlement conference within the next 45 days, or as is convenient for Judge Chen.

IT IS SO ORDERED.

Dated: April 3, 2006

_____
JOSEPH C. SPERO
United States Magistrate Judge